COPE, J.
Angelina Mansolillo appeals a final judgment entered in proceedings supplementary. We affirm.
Angelina Mansolillo was an officer and director of Stanley Roofing Company, Inc., which was operated by her son, Anthony. The business was operated in a facility owned by Ms. Mansolillo. A corporation owned by Ms. Mansolillo (Rocky & Angie Enterprises, Inc.), as well as Ms. Mansolil-lo individually, held security interests in property owned by Stanley Roofing, including eight trucks.
In January 1994, Parties by Lynn, Inc., and Lynn Shapiro (“plaintiffs”) filed suit against Stanley Roofing alleging damages by reason of improper roofing work. After a bench trial, judgment was entered against Stanley Roofing in July 1994.
Plaintiffs instituted proceedings supplementary, contending that assets of Stanley Roofing had been the subject of a fraudulent conveyance. Proceedings before a general master established that as of June 1994, Stanley Roofing had ceased doing business and was insolvent.
The son organized another roofing company called Enterprises by Stanley, Inc., which did business from the same business premises. Ms. Mansolillo denied that she held any formal position with Enterprises, but the master found that in its initial stages Ms. Mansolillo held a role of substantial authority, including check writing authority, before later severing such relations.
The master found that when Stanley Roofing was insolvent and Ms. Mansolillo knew of its insolvent condition, Stanley Roofing transferred eight trucks to Ms. Mansolillo. Initially, Ms. Mansolillo leased the trucks to Enterprises, but subsequently sold two trucks to Enterprises, and six trucks to a third person in Georgia, for a total of $42,500. Ms. Mansolillo deposited the proceeds in the Enterprises checking account. She stated that this was done as an expedient because there was no remaining checking account for Stanley Roofing. She contended that the proceeds of $42,500 were ultimately paid out to third-party creditors and that she should not be held liable under the fraudulent conveyance statute.
The general master found that there had been a fraudulent conveyance under chap *639 ter 726, Florida Statutes (1993).[1] The master recommended entry of judgment against Ms. Mansolillo for the amount of the plaintiffs’ unpaid judgment, plus interest. The circuit court denied exceptions and entered judgments as recommended. Ms. Mansolillo has appealed.
Ms. Mansolillo argues in substance that the evidence is legally insufficient to establish that there was a fraudulent transfer. We disagree.
The trial court found that there was a fraudulent transfer of the trucks under subsection 726.106(2), Florida Statutes, which provides:
(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
The idea here is that the insider cannot accept payment for an antecedent debt when the debtor is insolvent, unless other creditors are paid first. There is no dispute that the plaintiffs qualified as a “creditor” under this subsection, see id. § 726.102(4); that, as an officer, director, and relative of an officer and director, Ms. Mansolillo was an “insider,” see id. § 726.102(7)(b)l.,2.,6.; and that Ms. Man-solillo knew that Stanley Roofing was insolvent.
Ms. Mansolillo contends, however, that there is no evidence the transfer of the trucks was made to her “for an antecedent debt.” Id. § 726.106(2). She points out that there is no documentation indicating that the transfer was to satisfy the antecedent debt owed to Ms. Mansolillo or her company.
We conclude that the evidence is sufficient on this point. By June 30, 1994, the eight trucks had been transferred to Ms. Mansolillo, and she entered into a lease of the trucks to Enterprises. The trucks were conveyed from Stanley Roofing to Ms. Mansolillo for no consideration. Ms. Mansolillo has offered no plausible explanation why the trucks would be transferred to her personally, for no consideration, if it was not for satisfaction of the indebtedness owed to her or her corporation. Absent some plausible explanation, the evidence supports the conclusion that the transfer was, in fact, for an antecedent debt.
Ms. Mansolillo points out, however, that in January and May 1995, she sold the trucks and deposited the proceeds in the bank account of Enterprises. She testified that all of the funds were paid out to third persons and that she kept nothing for herself. She argues that had the purpose of the transfer been to satisfy antecedent indebtedness, logically she would have kept the proceeds of the trucks sales for herself, instead of depositing the money in the Enterprises account. She says that there was no longer a checking account for Stanley Roofing, and that is why she used the Enterprises account.
We note that Ms. Mansolillo entered into the truck lease in June of 1994, and did not sell the trucks until January and May of 1995. Historically, Ms. Mansolillo had provided the business premises and other financial support for the roofing company. The evidence is consistent with the idea that she initially took the trucks as her own, but later decided to provide further financial assistance for the roofing company.
Assuming, however, for purposes of discussion that this particular transaction is not properly viewed as coming within subsection 726.106(2), the evidence also establishes the existence of a fraudulent transfer under subsection 726.106(1), which provides:
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the *640 transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
In this case Stanley Roofing transferred the trucks to Ms. Mansolillo without receiving a reasonably equivalent value in exchange, at a time when she knew that Stanley Roofing was insolvent and the plaintiffs’ claim was already in existence. Under either analysis, there was a fraudulent transfer in this case.
Ms. Mansolillo’s more substantial argument is that it would be inequitable to enter judgment against her under the Fraudulent Transfer Act where she did not personally retain any of the $42,500 which she received for the trucks. We note that the statute provides, “Unless displaced by the provisions of ss. 726.101-726.112 [the Fraudulent Transfer Act], the principles of law and equity .... supplement those provisions.” Id. § 726.111. Thus, equitable considerations can be taken into account.
We do not think, however, that the equities are with Ms. Mansolillo in this case. In substance, Stanley Roofing closed down and Enterprises opened up the same business on the same business premises. Trucks worth $42,500 were transferred out of Stanley Roofing for no consideration and the proceeds wound up in the Enterprises account. To the extent that Stanley Roofing debts to suppliers were satisfied from this amount (and the proof of any such amount is unsatisfactory), the evidence supports an inference that this was done so that suppliers would keep furnishing materials to Enterprises. Meanwhile assets which otherwise would have been available to the plaintiffs for execution were placed beyond their reach. There was no plan of dissolution for Stanley Roofing, no notification of creditors, and no payments were ever made to plaintiffs. Although our reasoning differs in some particulars from that of the general master, we conclude that he reached the correct result.
Ms. Mansolillo also challenges the amount of the judgment entered by the trial court. Under the Fraudulent Transfer Act, “the creditor may recover judgment for the value of the asset transferred ... or the amount necessary to satisfy the creditor’s claim, whichever is less.” Id § 726.109(2). In this case the plaintiffs’ judgment was for $39,012.81, and the trucks were sold for $42,500. Thus $39,012.31 is the correct amount under the statute. However, when prejudgment interest is added, the judgment amount exceeds $42,500. Ms. Mansolillo argues that the entire judgment amount, including prejudgment interest, cannot exceed $42,500. We disagree. Once the loss is fixed as of specific date,[2] prejudgment interest is to be added to that amount. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985).
For the reasons stated, the judgment is
Affirmed.

. The sales of the trucks were made in January and May, 1995.

. The general master fixed the loss as of July 15, 1994, and Ms. Mansolillo has not claimed error with regard to the selection of that particular date.